UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

MARCUS ANTHONY ECCLES,

                Plaintiff,                            Case No. 2:11-cv-145

v.                                                     Honorable R. Allan Edgar

KYLIE WOODS et al.,

                Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff, an African American, presently is incarcerated at the Richard A. Handlon Correctional Facility but complains of events that occurred at the Chippewa Correctional Facility (URF).[1] In his *pro se* complaint, Plaintiff sues the following URF employees: Assistant Librarian Kylie Woods, Librarian Supervisor Amanda Winnicki, Librarian Manager Chris Henson, Classification Director Matt Calder, Assistant Resident Unit Supervisor Becky Freytag, Assistant Deputy Wardens Fred Robinson and Duncan MacLaren, and Warden Greg McQuiggin.

Plaintiff's complaint concerns his prison employment. In December 2004, Plaintiff was classified as a law clerk and a legal writer at URF but he was never offered a job in those capacities by Defendants Winnicki and Henson. Plaintiff complains that Defendants Henson and Winnicki discriminated against African American inmates from working in the law library. Plaintiff was eventually hired as a general clerk.

In April 2006, Plaintiff was transferred to Ojibway Correctional Facility where he worked as a legal writer. A few months later, Plaintiff was transferred to Straits Correctional Facility. Although Plaintiff was classified by Defendant Calder as a legal writer, he was not hired as one because the Straits Correctional Facility did not have a legal writer program. In 2008, the MDOC established a legal writer program at KTF but Plaintiff was not offered the legal writer position.

---

[1] Plaintiff also refers to actions that occurred at the Straits Correctional Facility (KTF) in his complaint. According to the Michigan Department of Corrections' (MDOC) website, Chippewa Correctional Facility has an east and west side. The west side of the facility was formerly known as the Straits Correctional Facility. *See* http://www.michigan.gov/corrections/0,1607,7-119-1381_1385-5161--,00.html. Because KTF has been combined with URF, this Court will refer to the Defendants as URF employees.

On July 7, 2009, Plaintiff sent a kite to Defendant Calder asking why he was not offered the legal writer position at the Straits Correctional Facility. Plaintiff was told that the job was not currently open because the MDOC had hired another inmate for the legal writer job. Defendant Calder, however, assured Plaintiff that he was next on the list. In the meantime, Plaintiff requested that Defendants Henson and Freytag sign an agreement that Plaintiff would be the next legal writer but they refused. Plaintiff complains that Defendants Henson and Winnicki discriminated against African American inmates.

On August 27, 2009, Defendant Freytag transferred Plaintiff to URF. A few days later, Plaintiff was hired as a legal writer. On October 6, 2009, however, Plaintiff was placed on probation. Fifteen days later, Plaintiff was terminated from his legal writer job. Plaintiff complains that the prison Program and Work Assignment Evaluation Sheet was not filled out correctly and that he was supposed to receive thirty days' probation according to Michigan Department of Corrections (MDOC) Policy Directive 05.01.100 (effective Nov. 1, 2010). Plaintiff states that he has exhausted his administrative remedies but he claims that Defendant McQuiggin wrongly denied his grievance appeal.

Plaintiff argues that Defendants Woods, Winnicki, Henson, Calder and Freytag violated his First, Fifth, Eighth and Fourteenth Amendment rights for refusing to employ him as a legal writer at KTF. Plaintiff also complains that Defendants Robinson, MacLaren and McQuiggin wrongly denied Plaintiff's grievances and his grievance appeals in violation of his due process rights. Plaintiff further claims that Defendant McQuiggin wrongly refused to reinstate Plaintiff's employment at URF in violation of his due process rights. In addition, Plaintiff states that Defendants Calder, Winnicki, Henson and Woods acted in concert to exclude Plaintiff from a legal

writer job assignment at KTF. Finally, Plaintiff alleges that Defendants Woods, Winnicki and Henson refused to allow African American prisoners from working in the law library.

Plaintiff requests declaratory and injunctive relief and compensatory damages.

### Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal*

plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Employment

Plaintiff claims that Defendants Woods, Winnicki, Henson, Calder and Freytag violated his First, Fifth, Eighth and Fourteenth Amendment rights by refusing to employ him as a legal writer at KTF. Plaintiff also argues that Defendant McQuiggin wrongly refused to reinstate Plaintiff's employment as a legal writer at URF.

Plaintiff first claims that Defendants violated his rights under the Due Process Clause of the Fifth and Fourteenth Amendments. "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). The Sixth Circuit consistently has found that prisoners have no constitutionally protected liberty interest in prison employment under the Fourteenth Amendment. *See, e.g.*, *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (district court properly dismissed as frivolous the plaintiff's claim that he was fired from his prison job); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"). Morever, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter v. Tucker*, No. 03-5021, 2003 WL 21518730, at *2 (6th Cir. July 1, 2003) (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Plaintiff therefore fails to state a due process claim arising from Defendants' refusal to employ him as a legal writer at KTF and from the termination of his prison employment at URF.

Plaintiff also alleges that Defendants violated his Eighth Amendment rights when they deprived him of a prison job at KTF. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey*, 832 F.2d at 954 (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The loss of a prison job, regardless of the reason, does not amount to cruel and unusual punishment. *See Ivey*, 832 F.2d at 955 (rejecting an Eighth Amendment claim based on the loss of a prison job). "[F]orcing an inmate to live without such privileges as bingo, a television, or a job does not constitute the infliction of serious pain necessary to state an Eighth Amendment claim." *Smith v. Sapp*, Nos. 97-5642, 97-5921, 1998 WL 384620, at *1 (6th Cir. June 19, 1998) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981) (state actions that limit jobs and educational opportunities do not constitute punishments under the Eighth Amendment, much less punishments that inflict unnecessary and wanton pain)). As a consequence, Plaintiff fails to state an Eighth Amendment claim.

Plaintiff finally argues that Defendants violated his First Amendment rights by refusing to provide him with a legal writer job at KTF. However, Plaintiff does not provide any information regarding his First Amendment claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Twombly*, 550 U.S. at 555; *Ashcroft*, 129 S. Ct. at 1949. Therefore, Plaintiff fails to state a First Amendment claim.

**B.     Grievances**

Plaintiff complains that Defendants Robinson, MacLaren and McQuiggin wrongly denied his grievances and his grievance appeals. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally

protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

### C. Discrimination

Plaintiff, an African American, claims that Defendants Woods, Winnicki and Henson discriminated against African American inmates by refusing to allow them to work in the law library. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). Plaintiff claims that he was discriminated against based on race. When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from

valid penological objectives – including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citing, *inter alia*, *Turner v. Safley*, 482 U.S. 78, 84 (1987)).

Plaintiff's allegations, however, fall far short of demonstrating that Defendants discriminated against him based on his race. Plaintiff merely states that Defendants Woods, Winnicki and Henson treated him differently because he is African American. Plaintiff does not provide any specific factual allegations to support his contention, such as identifying white prisoners given library employment who were similarly situated in all relevant respects. Therefore, Plaintiff's allegations on this point are wholly conclusory and fail to state a claim under § 1983. *See Twombly*, 550 U.S. at 555; *Ashcroft*, 129 S. Ct. at 1949.

### D. Conspiracy

Plaintiff alleges that Defendants Calder, Winnicki, Henson and Woods acted in concert to exclude Plaintiff from a legal writer job assignment at KTF. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140, at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to

commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). A simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. *See Twombly*, 550 U.S. at 556 (requiring factual allegations); *see also Iqbal*, 129 S. Ct. at 1250. Moreover, as previously discussed, since Plaintiff fails to adequately allege that any Defendant violated his federal rights, Plaintiff cannot demonstrate that any alleged agreement was intended to deprive him of a federal right.

### E.     State Law

Plaintiff argues that Defendants violated the probation period in MDOC Policy Directive 05.01.100 when they terminated his employment. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because a policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing Faughender v. City of N. Olmsted, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:     6/21/2011              /s/ R. Allan Edgar
                                  R. Allan Edgar
                                  United States District Judge